

125 Park Avenue, 7th Floor
New York, NY 10017
Telephone (212) 655-3500
Facsimile (212) 655-3535

Henry E. Mazurek
*Partner*
Direct (212) 655-3594
Fax (646) 682-9222
hem@msf-law.com

December 17, 2019

**VIA ECF**

Hon. Frederic Block
United States District Judge
Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Courtroom 10C South
Brooklyn, NY 11201

      Re:    *United States v. Barca, et al.*, 19-cr-575 (Andrew Campos)

Dear Judge Block:

      We represent Defendant Andrew Campos in the above-referenced case. We respectfully submit this reply in further support of Mr. Campos' appeal of Magistrate Judge Reyes' order of detention, and to address several discrete points raised by the government's letter in opposition to Mr. Campos' bail appeal.[1]

      As elaborated in Mr. Campos' initial bail letter, the government has not met its burden of demonstrating that he poses a risk of future dangerousness or obstruction of justice. The Indictment presents largely economic crimes against him involving an effectively defunct construction subcontracting business that presents no future economic risk. Moreover, the thin evidence of Mr. Campos' alleged participation in a single extortion or any threat of future obstruction are simply insufficient to overcome the joint presumptions of bail and innocence. In any event, any such risk would be adequately addressed by the substantial bail package he proposes, anchored by: (i) a $4,500,000 personal recognizance bond, co-signed by eight financially responsible individuals, and secured by four homes belonging to Mr. Campos' closest family members and two lifelong friends, and (ii) home detention, with electronic monitoring, at Mr.

---

[1] The government's December 13, 2019 opposition letter [Dkt. 95] is referred to herein as "Gov. Opp."

Campos' family home, where he would reside with his wife and four young daughters.[2] *See* December 11, 2019 Bail Appeal Letter [Dkt. 86] at 2.

Notably, Mr. Campos' codefendants, against whom the government also sought pretrial detention, have been released on similar, or less burdensome, bail packages. Magistrate Judge Levy ordered codefendant Richard Martino's release on a $4.5 million personal recognizance bond secured by five properties, with home detention and electronic monitoring. *See* Order Setting Conditions of Release and Appearance Bond as to Richard Martino [Dkt. 93] (Dec. 12, 2019). Codefendant Mark Kocaj was released by Magistrate Judge Bulsara on December 6, 2019, on a $600,000 personal recognizance bond co-signed by three financially responsible individuals, with a condition of home detention. *See* Minute Entry as to Mark Kocaj [Dkt. 75] (Dec. 6, 2019).[3]

Despite these results for related codefendants, the government insists on Mr. Campos' continued detention. As in its initial detention letter, the government's opposition to Mr. Campos's bail appeal largely rests on its allegations of Mr. Campos' ties to organized crime to claim a presumption of future dangerousness.[4] (*See* Gov. Opp. at 5-6.) However, the legal precedent on which the government relies – cases involving serious acts of violence – contrast sharply with its proffered evidence here involving largely economic crimes intended "to enrich [Campos] and other members and associates of a long-running and profitable criminal enterprise." (Gov. Opp. at 3). *See contra, United States v. Colombo*, 777 F.2d 96, 97 (2d Cir. 1985) (cooperating witness "attended organization meetings at which Colombo directed" violence including "robberies" where "the victims were assaulted, "abduction of a supposed drug dealer," and "the attempted murder of a government informant," among other violent acts); *United States v. Salerno*, 631 F. Supp. 1364, 1367-68 (S.D.N.Y.), *vacated*, 794 F.2d 64 (2d Cir. 1986), *rev'd*, 481 U.S. 739, (1987), and *aff'd*, 829 F.2d 345 (2d Cir. 1987) (describing witness testimony and intercepted telephone calls discussing violent acts directed and approved by the defendants, including "two murder conspiracies"). The factual disparity between the charges against Mr. Campos in this

---

[2] Although the government characterizes this proposal as "materially the same," as the package Mr. Campos presented to the Magistrate Judge, (Gov. Opp. at 2), it is, in fact, more substantial. His proposal at the initial presentment hearing included a personal recognizance bond of just $1.5 million, secured by three homes other than his own. (Dec. 4, 2019 Bail Tr. 22:1-23:6.) Since then, Mr. Campos has had the opportunity to increase the bond amount, the number of properties posted as security, as well as the number of family members and friends co-signing the bond.

[3] Kocaj is charged with having ties both to the alleged Gambino crime family and Albanian organized crime, and the government proffered evidence of Kocaj's direct threats to an alleged victim of his extortionate collection of credit. (*See* Detention Ltr. at 10, 13-14.) Still, he was released on a bail package substantially less burdensome than Mr. Campos' proposal.

[4] As stated in Mr. Campos's initial bail letter to the Court, this case is not a presumption of detention case under the Bail Reform Act. *See* 18 U.S.C. 3142(e)(2). Indeed, in this case, there is both a presumption in favor of pretrial release and a continued presumption of innocence, as to the charges in the Indictment. *Id.* at §§ 3142(b), (c) and (j).

Indictment and the cases on which the government principally relies, only bolster Mr. Campos' point: this case is not one of the "extreme case[s]" requiring pretrial detention. *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986).

The government's suggestion that Mr. Campos poses a risk of future economic dangerousness—that if released, he will continue committing the same economic crimes to continue "enrich[ing] other members of the Gambino crime family," (*see* Gov. Mem. at 2, 3)—is glaringly weak. CWC Contracting Corp., which the government alleges was the vehicle Mr. Campos used for committing the instant offenses, is no longer a viable operation. Since the government's search of CWC Contracting Corp.'s offices in June of this year, and Mr. Campos' subsequent Indictment, CWC has been effectively run out of business (even though there is a presumption of innocence in the courts, the real world provides no such presumption; government legal action has the practical effect of shutting down business). CWC has lost its bank financing; most of its labor; and the co-defendants in this case, who were project managers on job sites, cannot associate with one another as conditions of their pretrial release, let alone do future business together. Real estate developers already have had to locate alternative subcontractors to replace CWC on job sites. Thus, the charges that Mr. Campos previously engaged in economic crimes through CWC Contracting Corp. are not indicative of his *future* dangerousness, which is the only operative question in this bail appeal. *See United States v. Madoff*, 586 F. Supp. 2d 240, 247 (S.D.N.Y. 2009) ("the Government needs to show that there is a serious risk that these potential harms exist *going forward*.") (emphasis added).

Nor does the weight of the evidence against Mr. Campos on allegations of dangerousness based on a single alleged extortion and obstructive conduct (*see* Gov. Opp. at 2-5), justify his detention. *See* 18 U.S.C. 3142(f). The government overstates the strength of the case against Mr. Campos on these counts.

With respect to the alleged extortion, the government's proffered evidence relates to "money [alleged victim] Doe owed to Campos." (Gov. Opp. at 3.) The government, however, failed to inform the Court of the context of this alleged transaction. We proffer that the evidence will show that "John Doe" ran a carpentry business that obtained work from CWC Contracting, Mr. Campos' business, and entered subcontracts with CWC on various construction sites. The terms of these subcontracts required CWC to pay for work performed by Doe's carpenters on a rolling basis as work was completed on the site and the developer or construction manager paid CWC. CWC, as indicated in its project "spreadsheet[s]" referred to in the government's opposition letter (*Id.* at 3), would sometimes advance payments to the Doe carpentry subcontractor, even before payments were due at various stages of the construction jobs under contract terms. "Doe"

asked Campos for these pre-payments to manage his own business and personal debts.[5] Campos is alleged to have agreed to advance these sums as credits to future payments that CWC expected to owe the "Doe" carpentry business under the terms of the various subcontracts. Thus, the government's claim that Campos was involved in "extortionate means to collect the money from Doe by unlawfully retaining money otherwise due to Doe for his services" (Gov. Detention Letter, Dec. 5, 2019, p. 13) (ECF Dkt. 17), overlooks the fact that CWC's "retaining money" paid by developers simply arose as a result of earlier prepayments already advanced to "Doe." The government does not allege how debits to these earlier credits, were "unlawfully retained" as a result of alleged extortion.

Further, the government proffers no evidence that Mr. Campos directed this so-called "extortion" or instructed others to threaten Doe in any way. Instead, it relies on general allegations that Campos did not have to do anything because "of his high-ranking position in the Gambino crime family." (Gov. Opp. at 3.) The government baldly asserts that a codefendant's alleged statements to "Doe" that he should "report" to Mr. Campos, "is powerful evidence of Campos's involvement in the extortionate collection of credit." (Gov. Opp. at 3 n.1.) However, to satisfy the more exacting clear and convincing evidence burden for pretrial detention based on a threat of future dangerousness, the government must show more. *See e.g., United States v. Collazo*, No. 90 Cr. 0824 (LMM), 1991 WL 89637, at *3 (S.D.N.Y. May 21, 1991) (in a presumption of detention case, holding that the government did not meet its clear and convincing evidence burden in the "absence of any evidence or proffer by the government that [the defendant] – as distinguished from 'Collazo's Organization' – has, in the past, used violence against others."). Here, the alleged words of a codefendant referring to Campos without more is insufficient evidence that Campos willfully participated in the charged extortion.

Similarly, while the government asserts that it "is prepared to prove Campos's participation in these crimes through, among other things, the testimony of multiple witnesses and consensual recordings documenting the obstructive efforts, which is persuasive evidence of Campos's personal involvement," (Gov. Opp. at 4), it has failed to do so, even by proffer. As was the case in its initial detention memorandum, (Detention Ltr. 12-13, 18-19), the government describes only

---

[5] The government's John Doe is apparently also the alleged victim in another extortion scheme charged in a separate criminal complaint, *United States v. Adrial Lopez*, Mag. No. 19-1126. This complaint and extortion was also described in the government's original detention letter against Mr. Campos. (*See* Gov. Detention Ltr., ECF Dkt. No. 17, Dec. 5, 2019, pp. 8-9, 26.) Lopez was charged with running a "loanshark" business and the government proffered a number of acts of violence and threats committed directly by Lopez. (*Id.*) None of these acts of violence are related back to Campos; indeed, Lopez is not charged in the *Barca/Campos* Indictment at all. Lopez, however, was granted bail by the Magistrate Judge over the government's objection and motion for pretrial detention. Defendant Lopez was ordered released on a several-hundred-thousand dollar bond, secured by one property, and signed by 8 co-signors. *See United States v Lopez, supra,* Mag. Dkt. 19-1126 (E.D.N.Y.).

third-party statements tangentially referencing Mr. Campos. (*See* Gov. Opp. at 4.) To date, no recordings or transcripts of such recordings, or any other evidence has been presented to the defense or the Court for review. *Compare United States v. LaFontaine*, 210 F.3d 125, 132 (2d Cir. 2000) (noting that "in most bail determination cases that have come before us where detention was premised on a showing of danger to the community, the government *has* called witnesses and *has not* relied primarily upon a proffer") (emphasis in original) (omitted internal citations). With nothing more concrete tying Mr. Campos to the charged lone extortion and obstructive conduct, the government simply cannot meet its burden of demonstrating that he poses a significant risk of future danger or obstruction that cannot be ameliorated by the strict combination of conditions on pretrial release proposed here.[6]

      For all the foregoing reasons stated here and in Mr. Campos' initial letter to the Court dated December 11, 2019, Mr. Campos should be released on the proposed conditions.

      Respectfully submitted,

      /s/ HEM
      Henry E. Mazurek
      Ilana Haramati
      *Counsel for Defendant Andrew Campos*

cc: Government Counsel (by ECF)

---

[6] The allegations regarding Mr. Campos' alleged "facilitation" of Martino's supervised release violations, (Gov. Opp. at 5), are similarly unavailing—Martino himself was released on a $4.5 million bail on December 12, 2019. The government did not appeal the Magistrate Judge's bail determination.