

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| KDE/KCB | *271 Cadman Plaza East* |
| F.#2015R00270 | *Brooklyn, New York 11201* |

December 20, 2019

By Hand and ECF

Honorable Frederic Block
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:    United States v. Andrew Campos
                Criminal Docket No. 19-575 (FB)

Dear Judge Block:

       The government respectfully submits this letter pursuant to the Court's direction at the December 19, 2019 conference on the defendant Andrew Campos's appeal from the Honorable Ramon E. Reyes, Jr.'s permanent order of detention (the "December 19 Conference"). The government sets forth below: (1) its assessment of certain aspects of Campos's proposed bail package; (2) its position on additional, technological conditions that may be imposed if Campos is released; and (3) responses to certain arguments made by Campos at the December 19 Conference. For the reasons set forth below and in its prior filings, the government maintains that there are no combination of conditions that can reasonably assure Campos's compliance with the terms of release and therefore he should be detained pending trial.

I.      The Defendant's Proposed Bail Package

       Since the December 19 Conference, the government has interviewed Campos's proposed sureties and assessed the properties proffered as collateral. With one exception, the government has no reason to doubt the adequacy of the proposed properties.[1]

---

[1] During the December 19 Conference, counsel stated that Paul Lembo, Campos's father-in-law, and his wife are willing to post as collateral their home that has "almost a million dollars in equity." Dec. 19 Conf. Tr. at 7. Counsel has since stated that the appraisal for Mr. and Mrs. Lembo's home indicates that it is worth approximately $700,000 (with no mortgage). The government does not believe that an additional property with more equity is

As to the proposed sureties, the government submits that at least one does not carry adequate moral suasion that, in light of all the facts and circumstances of the case, is sufficient to ensure Campos's compliance with the terms of release. Specifically, Mario Simone has offered to pledge his home as security. Mr. Simone, however, stated to the government that although he has known Campos since childhood, they do not speak regularly, and only see each other when Mr. Simone, who lives in Nanuet, New York, comes to the Arthur Avenue section of the Bronx. Mr. Simone also stated that he earns only approximately $30,000 in seasonal work at a hotel in Ocean City, Maryland. Therefore, while the government does not question Mr. Simone's desire to serve a surety, his lack of a current, close relationship with Campos reduces the moral suasion he would hold over Campos to ensure compliance with all terms of release.

II.  The Court's Inquiries About Monitoring Campos's Home

During the December 19 Conference, and in light of the concerns about Campos's obstruction of justice and threat (economic or otherwise) of future criminality, the Court inquired of the parties and Pretrial Services about the feasibility of installing listening devices and video monitoring equipment throughout Campos's home to ensure his compliance with all terms of release. The government has conferred with counsel for Campos, who have indicated that they object to the installation of such devices throughout the home.[2] Instead, they have proposed other measures, which the government submits still cannot ensure Campos's compliance with all the terms of release.

Specifically, Campos has indicated he is willing to (1) give Pretrial Services and the government access to his video surveillance equipment that monitors the exterior of his home[3]; and (2) permit Pretrial Services to install monitoring software on Campos's personal electronic devices and have his other family members password-protect their own devices. Although the government requests that these conditions be imposed if Campos is

---

necessary – as it believes that no combination of conditions can reasonably assure Campos's compliance with any terms of release – but notes this for the Court's consideration.

[2] Pretrial Services has also informed the government that it does not believe such monitoring would be technologically feasible, and for the reasons stated at the December 19 Conference, the government also believes this would not be appropriate.

[3] Counsel for Campos have agreed to ensure that the equipment allows for live monitoring and access to historical video footage for the maximum possible time. Counsel for Campos have also agreed that, if not already in existence, Campos would install video surveillance cameras outside the whole perimeter of the home.

granted bail, it respectfully submits that they do not sufficiently ensure compliance with all terms of release.

The first proposed, additional condition does nothing to ameliorate against the risk that Campos can use a cellular telephone – particularly a disposable phone that can be easily purchased at many local stores – to communicate with prohibited persons, commit crimes or otherwise continue to manage the affairs of the Gambino organized crime family. Although monitoring the video system might inform the government about who enters the home, it does not reveal what they might bring or what they might discuss with Campos while inside. It would also not permit an investigation if the government learns about illicit activity that occurred longer ago than the system's retention period, whatever that might be. Therefore, this measure would not sufficiently – or reasonably – assure Campos's compliance with the terms of release.

The same is true for the installation of monitoring software on Campos's electronic devices. This would also not prevent anyone from bringing Campos a new device unknown to the government or Pretrial Services and of course does not capture any in-person conversations Campos might have. Even over monitored equipment, the software does not capture audio calls. See Dec. 19 Conf. Tr. at 16-17. Further, asking Campos's family members to promise not to give their father or husband access to their devices shifts all responsibility for compliance to Campos and his family, and does so in a way that makes oversight of that compliance by Pretrial Services or the government almost impossible. Indeed, Campos's history demonstrates that he cannot be trusted to abide by court-imposed conditions in light of, among other things, his role in the violations of Martino's and Fiore's supervised release conditions. See Gov. Detention Memo., ECF Dkt. No. 17, at 20-21, 23.

In any event, these additional, proposed conditions amount to creating a "self-funded private jail[]" that would be unavailable to defendants of lesser means, which the Second Circuit had explicitly, and recently, forbid. United States v. Boustani, 932 F.3d 79, 82 (2d Cir. 2019); see also United States v. Millan, 4 F.3d 1039, 1049 (2d Cir. 1993) (stating that "[h]ome detention and electronic monitoring at best elaborately replicate a detention facility without the confidence of security such a facility instills" and, absent extensive resources from the government, forces "protection of the community [to] be left largely to the word of [the defendants]").

III.    Arguments Raised at the December 19 Conference

Finally, the government responds to certain arguments made by Campos at the December 19 Conference.

First, Campos claimed that he does not pose any future risk of dangerousness because his carpentry firm, CWC Contracting Corp. ("CWC"), has been "[put] out of business by the Government's Indictment here" and so "[t]here is no longer any access that

3

Mr. Campos has to continue to be an economic threat for any of the crimes charged here. That company is out of business." Dec. 19 Conf. Tr. at 22.

Even if CWC may be in the process of being replaced at various construction projects, that does not preclude a finding that Campos poses a risk of future economic dangerousness, which Congress has directed can constitute a danger to the community. See Senate Report at 3195 ("[L]anguage referring to safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community . . . . The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence."). For one thing, Campos can easily have associates – who are at his disposal given his high-ranking position in the Gambino organized crime family – commit crimes on his behalf despite the fact that the CWC entity may not pose a continuing threat. Indeed, Campos is associated with other businesses and has other significant assets – which he did not disclose during his Pretrial Services interview – through which Campos can continue to commit crimes. For instance, Campos, together with co-defendant Michael Tarul, are signatories to a bank account held in the name of CAM East Enterprises, Inc., which has had activity through at least September 2019. Similarly, Campos has a bank account at Sterling National Bank that, as recently as October 2019, he used to withdraw over $100,000 from CWC. Therefore, these significant assets and other potential business ventures show that even if CWC is winding down, Campos can still commit other crimes – in addition to posing a risk of obstructing the ongoing prosecution and investigation. See generally Gov. Detention Memo. at 18-19, 20-21.

Second, the government writes to again distinguish United States v. Persico, 376 F. App'x 155 (2d Cir. 2010), on which Campos again relied at the December 19 Conference. See Dec. 19 Conf. Tr. at 27-28. Campos stated that the defendant in that case was "alleged to be a long-standing member of [an] organized crime family," see Dec. 19 Conf. Tr. at 27, but in fact he was only an associate, not an inducted member, of La Cosa Nostra ("LCN"), see 376 F. App'x at 156. Regardless, the defendant there did not have a criminal history, and many of the meetings with LCN members and associates cited by the government were with blood members of his family. See 376 F. App'x at 156. In any event, the Court declined to reverse the district court's finding of dangerousness, instead remanding for reconsideration in light of the court's legal error in applying a presumption of dangerousness, which of course is not present here. See id. at 156-57.

4

IV.     Conclusion

Accordingly, for the foregoing reasons, the government respectfully submits that Campos's appeal from Judge Reyes's order of detention should be denied.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:     /s/
Keith D. Edelman
Kayla C. Bensing
Assistant U.S. Attorneys
(718) 254-6328/6279

cc:     Clerk of Court (by ECF)
        Defense Counsel (by ECF)