

*Henry E. Mazurek*
*Partner*
Direct (212) 655-3594
Fax (212) 655-3535
hem@msf-law.com

February 11, 2020

**Via ECF and Email**

The Honorable Rachel P. Kovner
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *United States v. Andrew Campos*, 19-cr-575 (FB)

Dear Judge Kovner:

We represent Defendant Andrew Campos in the above-captioned case. We write to oppose the government's motion to revoke bail, pursuant to 18 U.S.C. § 3148, because the government has failed to demonstrate by "clear and convincing" evidence that Mr. Campos violated a condition of his release.[1] 18 U.S.C. § 3148(b)(1)(B).

## I.    Legal Standard

Under 18 U.S.C. § 3148, the Court may only revoke a defendant's pretrial release if, "after a hearing," the Court determines: (1) that there is "clear and convincing evidence that the person has violated any other condition of release," *id.* at § 3148(b)(1)(B),[2] and (2) that, by a preponderance of the evidence, "there are no combination of conditions of release that will prevent the defendant from fleeing or posing a danger to the safety of the community or any other person, or that it is unlikely that he will abide by any condition." *United States v. Guastella*, No. 98 CR.

---

[1] The government's February 10, 2020 motion to revoke Mr. Campos's bail [Dkt. 145], is referred to herein as "Government Motion" or "Gov. Mot."

[2] Section 3148(b)(1)(A), also permits revocation of pretrial release upon a finding, after a hearing, that there is "probable cause to believe that the person has committed a Federal, State, or local crime while on release." Here, there are no allegations that Mr. Campos has committed a new crime while on pretrial release.

1325 (SWK), 2000 WL 973749, at *2 (S.D.N.Y. July 14, 2000) (citing 18 U.S.C. § 3148(b)(2)); *accord United States v. LaFontaine*, 210 F.3d 125, 130 (2d Cir. 2000).

## II. Mr. Campos did not Violate his Conditions of Release by Using a Cellular Telephone—the Government has not Met its Burden of Demonstrating Otherwise by Clear and Convincing Evidence

The government's proffered evidence, in the most favorable light, is nothing more than an FBI agent's allegation that she observed Mr. Campos "with his head down using a cellular telephone." (Gov. Mot. at 3.) This claim alone, in the totality of circumstances and in light of other evidence, falls far short of the "heavy burden" the government faces in demonstrating this alleged violation by clear and convincing evidence. *United States v. Scali,* 738 F. App'x 32, 33 (2d Cir. 2018) (describing the clear and convincing standard as a "heavy burden"); *United States v. Collazo*, No. 90 CRIM. 0824 (LMM), 1991 WL 89637, at *3 (S.D.N.Y. May 21, 1991) (holding that the government did not meet the "heavy burden" of demonstrating by clear and convincing evidence that the defendant "if released, would be a danger to the community," under 18 U.S.C. § 3142); *see also Guastella*, 2000 WL 973749, at *3 (denying the government's motion to revoke defendant's pretrial release based on two alleged violations of "the condition that [the defendant] properly secure the bond with [his] house," where the government failed to offer sufficient evidence in support of their contentions).

The agent's "observation" is shockingly uncorroborated. The government's only other proffered evidence, a photograph attached as Exhibit B to the government's motion, adds nothing. The government's lonely photograph only shows that the surveilling agent's view of Mr. Campos was clearly obstructed and, as a result, "the photograph does not explicitly picture the telephone." (Gov. Mot. at 3 n. 2.)

According to the government's filing, it claims the following:

1. Multiple law enforcement agents conducted a full day of surveillance of Mr. Campos during his court-approved trip with his 20-year-old daughter, S. Campos, to a Western Connecticut doctor's office for an invasive procedure. (*Id*. at 3.)

2. At least one of these agents sat at the waiting room at this Connecticut doctor's office from approximately 11:40 a.m., when an agent observed Mr. Campos and his daughter arrive, until 3:43 p.m., when the agent observed them leaving the office's waiting area. (*Id.*)

3. During this four-hour surveillance, the FBI produced a single obstructed-view photograph of Mr. Campos with his head lowered, apparently taken from a far corner of the waiting room. (Ex. B to Gov. Mot.) We also note that this photograph depicts S. Campos with her head facing down. (*Id.*)

4. The surveilling agents later searched with consent: (1) Mr. Campos; (2) S. Campos and her handbag; and (3) the car they used to travel to and from the doctor's visit. The only cellular telephone identified in these searches was S. Campos's phone. No additional cellular telephone was recovered from the multiple searches conducted. (Gov. Mot. at 3.)

The government does not proffer whether the surveilling agent or agents in the doctor's waiting area also observed S. Campos with a cellular telephone, or whether the agent allegedly observed Mr. Campos and his daughter use two phones at the same time. Thus, the government's claim is unclear whether the allegation arises from an observation that S. Campos shared her phone with her father, or that Mr. Campos possessed a separate phone from his daughter. This ambiguity is important because, for some reason, the agents who searched Mr. Campos, his daughter, and their car, did not seize S. Campos's telephone or seek a warrant to search it. Instead, the agents continued the search of the vehicle and the personal belongings of Mr. Campos and his daughter after they located S. Campos's cellular telephone.

In any event, at an evidentiary hearing, S. Campos is prepared to testify that she maintained possession of her cellular telephone at all times on February 10, 2020, and never gave her phone to her father. While she was with her father in the doctor's waiting room, she used her own phone, by among other things, communicating by text message and iMessage with her mother, sibling and friends. She would testify that her father never asked to use her phone or to pass messages to anyone on her phone while they were at the doctor's office. S. Campos also kept possession of her phone when she was called to the doctor's back office for her procedure. Before being sedated, she placed her personal belongings, including her phone, under her hospital bed. When she recovered from the procedure, she removed her personal belongings from under the bed where she placed them. S. Campos has maintained the secrecy of her phone's password from her father, as directed in the Court's bail order. Finally, S. Campos would testify that she never saw her father possess or use a different cellular telephone at any time she was with him on February 10, 2020.

Given this eyewitness testimony, contrary to the government's proffer, an evidentiary hearing is required to determine whether the government can meet its "heavy burden" by clear and convincing evidence that Mr. Campos violated his bail conditions, namely that he: (1) "not access any cellular telephones or other internet-enabled devices belonging to his wife and children," and (2) not possess any cellular telephone and other internet-enabled device unless they are electronically monitored by Pretrial Services. *See* Memorandum and Order [Dkt. 105] at 5 12/23/19 (Block, J.).

### III. Mr. Campos is Entitled to an Evidentiary Hearing Prior to Revocation of his Pretrial Release

Because there is a disputed issue of material fact, the Court should hold an evidentiary hearing prior to deciding the merits of the government's motion. Section 3148 provides that a "judicial officer shall enter an order of revocation and detention if" certain findings are made "after a hearing." 18 U.S.C. § 3148(b). The Second Circuit has held that the Bail Reform Act entitles

defendants "to a further hearing, including a further opportunity to testify on their own behalf and to present evidence to demonstrate that revocation of bail is not merited." *United States v. Davis*, 845 F.2d 412, 415 (2d Cir. 1988) (reversing order revoking defendants' pretrial release, and remanding to the district court for a further evidentiary hearing); *see also LaFontaine*, 210 F.3d at 128-29 (although the government's letter requesting revocation of the defendants' pretrial release "set forth in great detail the evidence the government was prepared to proffer," the district court held three days of hearings in which "[b]oth sides had the opportunity to present argument and evidence to the court."). Accordingly, the Court should afford Mr. Campos an opportunity to present evidence and testimony demonstrating that he did not violate his pretrial release by using an unmonitored cellular telephone as alleged by the government.

### VII. Conclusion

The government simply has not carried its burden of demonstrating, by clear and convincing evidence, that Mr. Campos violated his bail conditions. This Court should, therefore, deny the government's motion, or in the alternative, grant an evidentiary hearing to resolve disputed factual issues.

Respectfully submitted,

/s/ HEM
Henry E. Mazurek
Ilana Haramati
Meister Seelig & Fein LLP
125 Park Avenue, Suite 700
New York, New York 10017

*Counsel for Defendant Andrew Campos*

cc: Counsel of Record (*via ECF*)