

*Henry E. Mazurek*
*Partner*
Direct (212) 655-3594
Fax (212) 655-3535
hem@msf-law.com

August 21, 2020

**VIA ECF**

Hon. Frederic Block
United States District Court Judge
United States Courthouse
225 Cadman Plaza East
Courtroom 10C South
Brooklyn, NY 11201

    Re:    *United States v. Andrew Campos*, 19-cr-575 (FB)

Dear Judge Block:

    We represent defendant Andrew Campos in the above-captioned case. We write to respectfully request modification of Mr. Campos' original conditions of release to convert his strict home confinement to a night curfew allowing limited movement within Westchester County, while maintaining continued electronic monitoring.

**1.    The COVID-19 Pandemic Constitutes a Changed Circumstance Warranting Reconsideration of Mr. Campos' Bail Conditions**

    Because of the COVID-19 pandemic, Mr. Campos' case has been substantially delayed. The status conference initially scheduled for May 28, 2020 is instead set for October 1, 2020. And there is no real hope for a trial by the end of this year on Mr. Campos' December 5, 2019 Indictment. Realistically, and through no fault of his own, he will remain in pretrial limbo for well over one year, not because of the case's complexity,[1] but because of an unforeseeable global emergency that has slowed the federal court system to a crawl.

---

[1]     Despite the Indictment's voluminous bluster, this case, at bottom, represents little more than the timeworn standard used by prosecutors in construction industry cases: claims of unreported cash payments to workers. The government seeks to dress up these claims by adding specious charges of so-called honest-services wire fraud based on alleged personal favors by subcontractors to project managers and building-owner agents. These alleged favors did not include claims of transfers of large sums of money or assets, as one might expect. Rather, based on the government's discovery, its case appears to rest on allegations of limited small-value gifts such as lending a few dry-wall laborers to help at a person's home renovation project, purchases of Disney World Fast-Pass Tickets (valued at a few hundred dollars), contributions to the Boy

Over the last nine months, Mr. Campos has been subject to some of the most onerous bail conditions possible: strict home detention, electronic monitoring, restricted access to internet-enabled devices, and home security camera monitoring, among others. (*See* ECF Doc. 104.) He has not been able to leave his house except to visit with lawyers, attend to medical needs for himself or his children, and get a sporadic haircut or assist in shopping for household needs. Under this scrutiny, Mr. Campos has demonstrated perfect compliance with these bail requirements. There has not been a single credible allegation of non-compliance.[2]

These substantial pre-trial liberty restrictions continue to strain not just Mr. Campos—but because of COVID-19, they have burdened his family members who have borne significant additional responsibilities since the pandemic's onset. For example, Mr. Campos' mother-in-law has suffered serious medical complications in the last several months. Because he is on home detention, Mr. Campos cannot assist his wife with her mother's care. Mr. Campos' 96-year-old grandmother is also virtually housebound because of the pandemic, and Mr. Campos remains unable to visit and spend time with her.[3]

The altered reality of life during the COVID-19 public health crisis plainly constitutes a changed circumstance under § 3142. Indeed, several courts in this Circuit have found that the unforeseen exigencies posed by COVID-19 warrant reconsideration of their earlier bail decisions. *See, e.g., United States v. Jackson*, No. 19-CR-356 (ARR), 2020 WL 1905674, at *3 (E.D.N.Y. Apr. 17, 2020) (granting bail based on the changed circumstances posed by COVID-19, although previously denying bail to a defendant who "does not have a good track record of complying with conditions of bail and appearing in court as required," and "does have a significant criminal history and he has missed court appearances"); *United States v. Stephens*, No. 15-CR-95 (AJN), 2020 WL

---

Scouts, and interior framing at a Jujitsu gym. In exchange for these alleged "favors," the government claims that representatives of major construction management companies and multi-million dollar real estate developers risked their careers and broke the law to allow Mr. Campos' dry-wall company to make substantial unearned profits for work never performed. On its face, these claims defy both logic and the reality of how construction projects are billed, verified and ultimately paid. The government's lack of evidence on the kickback charges favor the requested bail modification under the 18 U.S.C. § 3142(g) factors, because the discovery does not show compelling "weight of the evidence" against Mr. Campos on the cornerstone charges of the government's indictment. 18 U.S.C. § 3142(g)(2).

[2]  Indeed, the government withdrew their February 10, 2020 motion to remand Mr. Campos after investigation revealed that he had not violated his conditions of release when he attended a surgical procedure being performed on one of his daughters. (*See* ECF Doc. 147.)

[3]  In fact, when counsel sought Pretrial Services' approval to permit Mr. Campos to occasionally visit with his grandmother, we were summarily denied.

1295155, at *2 (S.D.N.Y. Mar. 19, 2020) (granting bail based on changed circumstances of COVID-19 pandemic and new evidence undermining the government's allegations).

Because the current restrictions imposed on Mr. Campos, including strict home detention, now exceed the "least restrictive conditions" necessary to "reasonably assure" the safety of the community and to prevent obstruction of justice, we respectfully request the Court to modestly modify his bail to permit travel within Westchester County, subject to a night curfew and electronic monitoring. 18 U.S.C. § 3142(c)(1)(B).

**2. Mr. Campos Has Fully Complied With His Bail Conditions Since His Release in December 2019**

Mr. Campos was first arrested on December 5, 2019. On December 26, 2019, he was released to his family home in Scarsdale, New York, on strict home confinement with electronic monitoring. (*See* ECF Doc. 104.) Initially, Mr. Campos was only permitted to leave his home for medical and legal visits in New York City and Westchester County, with Pretrial Services' prior approval. (*Id.*) On April 14, 2020, on consent of the government and Pretrial Services, the Court modified these conditions to permit Mr. Campos to travel to the supermarket and pharmacy, with advance notice and permission from Pretrial Services. (*See* ECF Doc. 161.) In addition to pre-approved legal and medical visits, and weekly trips to the grocery store, Mr. Campos has taken several Court-approved day trips for medical visits and family errands. (*See, e.g.,* ECF Docs. 143, 164, 170, 173, 178, 187.) Throughout, Mr. Campos has exhibited perfect compliance with his bail conditions.[4] This record supports relaxing Mr. Campos' conditions of release, and undermines any argument that this modification poses a risk of dangerousness or obstruction of justice.

Following Mr. Campos' arrest, the government moved for his detention, alleging dangerousness and risk of obstruction of justice. *See* Gov. Detention Mem., ECF Doc. 17, at 1 (the government moved to detain Mr. Campos, and several of his co-defendants, all of whom were eventually released on bail, arguing that "the defendants pose a danger to the community, a risk of obstruction of justice and cannot be trusted to abide by the terms of release. Therefore, they should be detained pending trial."); Dec. 5, 2019 Bail Tr. at 5:4-6 ("The government is seeking detention both on the basis of dangerousness and substantial risk of obstruction of justice."). At that time, the government argued that even the extremely strict conditions that Mr. Campos proposed—and pursuant to which he has since been released without incident—were insufficient. *See, e.g.,* Dec. 5, 2019 Bail Tr. at 30:12-18 ("all of the conditions Mr. Mazurek is offering, they're not going to get the job done. When Mr. Campos, even sitting at home can . . . send messages to associates who are loyal to him and can carry out messages, can tell other witnesses not to cooperate, can retaliate against other people and prevent them from coming forward and having the truth come out."). Mr. Campos, however, has heeded the Court's bail orders, proving that the government's worst fears

---

[4] Mr. Campos' compliance is unsurprising. Between 2003 and 2006, during his previous period on bail in an earlier federal case, *see United States v. Martino, et al.,* No. 03 Cr. 304 (CBA) (E.D.N.Y.), Mr. Campos was released without significant restrictions, and had no incidents of non-compliance throughout the almost three-year period.

at the outset of this case were unfounded. Indeed, there is no evidence that Mr. Campos has breached his bail conditions, attempted to communicate with his co-defendants outside the presence of counsel, obstructed the government's ongoing investigation or prosecution of this case, or otherwise committed any crimes since his arrest.[5]

The Bail Reform Act mandates that the Court "shall" order a defendant's release "subject to *the least restrictive* further condition, or combination of conditions, that [the Court] determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B) (emphasis added). Mr. Campos' exemplary compliance record since his release in December 2019, including the times he has been permitted to leave his house for legal meetings, medical visits and family errands, demonstrate that the home detention to which he is confined is vastly more restrictive than necessary to "reasonably assure" the Court that Mr. Campos poses neither a danger or a risk of obstruction of justice. *See, e.g., United States v. Vasconcellos*, 519 F. Supp. 2d 311, 317-18 (N.D.N.Y. 2007) ("past behavior best predicts future behavior and whether the court can rely on a defendant's good faith promises. Therefore, an analysis of how a defendant has honored his criminal justice promises in the past is a critical component of the bail analysis.") (quotation marks and citations omitted); *see also United States v. Dickson*, No. 17-MJ-01086-JJM, 2017 WL 3667644, at *4 (W.D.N.Y. Aug. 25, 2017) (defendant's recent lengthy record of compliance with probation and supervised release conditions rebutted presumption of dangerousness under court's § 3142 analysis).

3. **There is Scant Corroborating Evidence of the Government's Accusations of Extortion, the Only "Crime of Violence" Alleged Against Mr. Campos**

Although the Indictment focuses heavily on allegations of financial and tax frauds, in moving for Mr. Campos' detention, the government relied on sparce, outlying accusations of extortion and obstruction of justice to justify its request for detention. *See* Gov. Detention Mem., ECF Doc. 17, at 23 (moving for detention alleging that "the defendants extorted money from their victims through explicit and implicit threats of force and violence," and that "Campos, Fiore and Martino are all charged with efforts to obstruct justice, which especially counsels in favor of

---

[5] Cases finding that a defendant's compliance with bail conditions does not constitute a "changed circumstance" are inapposite. First, the COVID-19 pandemic, causing both additional delay in Mr. Campos' case and substantial burden on Mr. Campos and his family plainly constitutes a changed circumstance. *See supra* § 1. Second, in contrast to *United States v. Esposito*, 354 F. Supp. 3d 354 (S.D.N.Y. 2019), for example, Mr. Campos' compliance is not merely "a defendant's own evaluation of his character,*" id.* at 361, but an objective record that the Court can rely on in considering the conditions necessary to assure Mr. Campos' continued compliance.

detention."). A review of the Rule 16 discovery produced since, however, reveals that the extortion allegation—the only charge with even a whiff of violence—is based on the thinnest of evidence.[6]

Specifically, to support its assertion that Mr. Campos extorted "John Doe," by paying "off multiple loans that Doe owed to others, including the defendant Adrial Lopez,[7] and then used extortionate means to collect the money from Doe," *id.* at 12-13, the government recounted the following conversation:

> At one point, Lopez complained to Doe that he had not received certain money from Campos or one of his associates. Doe relayed this conversation to Campos, who stated, in sum and substance, that if Lopez hurt Doe after he knew that Campos was paying off the loan, that Campos would leave Lopez "on the sidewalk" and that if Lopez made Doe a "sacrificial lamb" then Lopez would "die that day."

*Id.* at 13. This quoted conversation in the government's detention memorandum, the government's *only* express claim of threats of violence by Mr. Campos, does not appear in the cooperating witness's consensual recordings, or any other discovery produced to date.[8] Curiously, this alleged threat also was not directed at the government's purported victim, "John Doe," whom, in the uncorroborated attribution above, Mr. Campos seemed to be defending. In the government's tortured reasoning, Mr. Campos is alleged to have helped "John Doe" pay off his "street" loans extended by others, and because of this assistance, he is charged with extorting the very person he aided against the actual creditors. This weak proof of a "crime of violence" against Mr. Campos further justifies a relaxation of the strict liberty constraints currently imposed against him. *See* 18 U.S.C. § 3142(g)(2) (noting that the government's "weight of the evidence" is one of the factors to be considered in setting bail conditions).

---

[6] Counts 11 and 12, an extortionate collection of credit conspiracy count and a substantive extortion count, are based on the same allegations.

[7] Adrial Lopez was arrested on a separate criminal complaint on December 5, 2019, and the government moved for his detention, asserting dangerousness. *See, e.g.,* Gov. Detention Mem. at 26 ("Lopez, a former professional boxer who still competes, has used acts and threats of violence to operate a loansharking business for over a decade, all the while fraudulently obtaining workers' compensation benefits."). Over the government's objection, Lopez was released on bail on December 16, 2019. Strangely, after moving for his detention as a danger to society and keeping him locked up for nearly two weeks at the MDC Brooklyn, the government never indicted Lopez, instead dismissing his complaint entirely on January 10, 2020. *United States v. Lopez*, 19-mj-1126, ECF Docs. 8, 15 (E.D.N.Y.). Public reports indicate he has not been subsequently prosecuted.

[8] The government has represented that it already produced all of the consensual recordings made by its cooperating witness.

The government's discovery also highlights that, at their core, the charges against Mr. Campos consist of financial and tax fraud crimes—a reality that the government attempted to obscure by including in the Indictment several pages of boilerplate organized crime language harkening back to the 1980s. *See, e.g.,* Indictment ¶¶ 1-11. Other than dusting off this template from a prior generation, the government has added almost nothing in discovery to claim that any of the economic crimes charged here have anything to do with New York organized crime lore, despite the many videos and photograph surveillance taken by federal agents from Arthur Avenue pizzerias and other Italian restaurants in the Bronx.

The primary allegations against Mr. Campos are that his business and other subcontractors paid their laborers in cash to avoid payroll taxes and that he allegedly agreed to perform favors for construction managers on various development projects in exchange for some unspecified favorable treatment.[9] Although it remains unclear whether this case will result in a pretrial disposition, based on initial assessments of advisory Guidelines ranges, Mr. Campos' sentencing range is approximately five to six years (in a light most favorable to the government) for these purported financial crimes. Defendants accused of similar "white collar" crimes are frequently released on their own recognizance, and even those with far greater sentencing exposure are often released on substantially more lenient conditions than Mr. Campos. *See, e.g., United States v. Stephen Bannon*, No. 20 Cr. 412 (AT), ECF Doc. 12 (S.D.N.Y. Aug. 20, 2020) (defendant Bannon, charged in multimillion dollar fraud and money laundering conspiracy, released on a personal recognizance bond secured by cash/property and co-signed by two suretors, authorized to travel in New York, Connecticut, Maryland, Washington, D.C., Virginia, and to use private air and boat travel with permission of the Court; no curfew); *United States v. Daugerdas*, No. 09-cr-581 (WHP), ECF Doc. 27 (S.D.N.Y.) (defendant charged in a $7 billion tax fraud scheme, who was eventually sentenced to 180 months' imprisonment, released on a $1 million bond secured by one home and co-signed by two suretors, permitted to travel throughout the continental United States; no curfew).[10]

---

[9] Indeed, the Court noted as much during the December 19, 2019 argument regarding Mr. Campos' bail:

> From looking at the papers . . . what does jump out, besides the one count of extortion which you explained, there are no alleged acts of violence. And when you see that type of Indictment. . . I think the judge should really carefully consider whether or not the presumption of innocence and the fact that there is a presumption to give bail should not be seriously considered.

(Dec. 19, 2019 Bail Appeal Tr. at 29:13-21.)

[10] Mr. Campos' estimated advisory Sentencing Guidelines also undermine any concerns that he would attempt to obstruct justice. His exposure, while serious, is not of the expected length that might create incentive to risk the additional severe penalties of obstruction of justice.

**4.     Conclusion**

Particularly because Mr. Campos has amply demonstrated that he can be trusted to abide by this Court's orders, continued strict home detention is not "the least restrictive further condition," 18 U.S.C. § 3142(c)(1)(B), to reasonably assure the safety of the community or to prevent obstruction of justice during the remainder of this litigation.

We respectfully request, therefore, that the Court modify Mr. Campos' conditions of release in the following ways:

(1) Remove strict home detention;
(2) Impose a night curfew, during the hours from 8 p.m. to 8 a.m.; and
(3) Restrict Mr. Campos' movement to within the county of his residence, Westchester County (for legal, medical and other visits outside of Westchester County, Mr. Campos will continue to obtain prior approval by Pretrial Services).

All other previously ordered conditions of release will remain in effect.

We understand that the government and the Eastern District of New York's Office of Pretrial Services continue to object to this request.

                                                                                                     Respectfully submitted,

                                                                                                      /s/ HEM
                                                                             Henry E. Mazurek
                                                                             Ilana Haramati
                                                                             Meister Seelig & Fein LLP
                                                                             125 Park Avenue, Suite 700
                                                                             New York, New York 10017

                                                                             *Counsel for Defendant Andrew Campos*

cc:     Counsel of Record (*via ECF*)